Mr. Justice Morris
delivered the opinion of the Court:
There has been no final action upon the bill of complaint. That bill has not been dismissed. The cause has never been set down for hearing upon its merits. And while the substantial relief prayed for is an injunction against the inspector ol buildings, the order appealed from is a purely interlocutory order.
It is plain from the statement of the case that the present appeal is wholly untenable and must be dismissed. If it was desired to present the appeal to this court in proper form, at least a formal order should have been made dismissing the bill, so that there might be some apparent element of finality in the action of the court. It is almost an elementary proposition of equity jurisprudence that, in the absence of special statutory provision, an appeal will not lie from an order discharging a restraining order and refusing an injunction pendente lite.
But we do not wish to dispose of this case on purely technical grounds of this character. There is enough in the case to warrant an expression of the opinion of the court on some of the substantial questions of law involved in it.
The main contention of the appellant, and one of the counsel for the appellee acquiesces in the justice of this contention, is that the Police Court of the District of Columbia, upon the information filed against the appellant in that court, is confined in its inquiry to the question whether the appellant has violated a municipal ordinance by refusing to obey a notice from the inspector of buildings, and that there can be no inquiry into the propriety of that notice. It is assumed on behalf of the appellant that in the Police Court the judgment of the inspector of buildings is final and conclusive; and it is argued, at least by one of the counsel for the appellee, that the inspector’s judgment must be regarded as final and conclusive by every court except the commis *257 sion provided for in the building regulations; and that it is not open to revision in any tribunal whatever.
We cannot yield our assent to any such dangerous doctrine as this. While police regulations that are evidently intended to secure the public safety, should be upheld as far as possible in the interest of the public, it cannot be that the most solemn constitutional safeguards of the rights of private property can be subjected to the final arbitrament, to the caprice perhaps, of a petty municipal officer, without any opportunity to the owner of such property to be heard in defense of his rights in accordance with the usages and the established rules of law. The highest legislative power in the land cannot deprive the citizen of his rights of property except by due process of law; it is hard to believe that, through the instrumentality of a municipal ordinance, the power so to do has been invested in an inspector of buildings.
Undoubtedly, there are cases where summary power may properly be vested for special purposes even in subordinate officials. The threatened spread of conflagration may justify the demolition of property in the probable pathway of the flames. It is proper to seek to prevent the threatened spread of contagious or infectious diseases by the destruction of infected clothing, and by quarantine regulations that sometimes very seriously interfere with the rights of personal liberty. There is no more dangerous thing to a populous or crowded city than insecure buildings or toppling walls; and it is proper that summary power to remove the danger should be vested in the public authorities, to be exercised through subordinate officials. Salus populi suprema lex— the public safety is the supreme law — is the maxim that governs in' such cases; and it is not only the right, but it may be the duty, of those charged with the supervision of such matters to act promptly and summarily in the discharge of their official functions. But while in all such cases the presence of danger and an honest apprehension of peril will excuse the person who assumes to conserve the public safety against *258 impending disaster, yet in every instance he proceeds at his peril. In every instance he renders himself liable to suit; and in every instance he must respond in damages to any person injured by his action, if the action was unjustified by the circumstances of the case. See Cooley on Constitutional Limitations, Ch. XVI, where the leading cases on the subject are collected.
Now if this be so in cases where danger is apparent and disaster imminent, and where the action, if there is to be effective action at all, must be immediate and summary, can it be claimed with any show of reason that, in cases where the danger is remote and perhaps entirely contingent, as in the present instance, the action ex parte of a municipal officer which deprives the citizen of his sacred right to the free use and enjoyment of his own property, is entitled to total immunity from judicial investigation and judicial scrutiny? A more palpable violation of our constitutional safeguards cannot well be imagined than is involved in the- construction which is sought to be here maintained of the power supposed to be vested in the inspector of buildings. There is no such power vested in that officer. There is no municipal ordinance that seeks to give him any such power. And there is no legislative enactment that assumes in the remotest degree to warrant the exercise of any such power. The authority vested in the inspector, it is true, is summary; and he is justified in forming his own judgment entirely ex parte and without any hearing of the party whose interests are involved. But if that party dissents from the conclusions of the inspector, he is entitled to have his rights adjudicated in a court of law, according to the recognized modes of courts of law.
It is not seriously contended that the right of appeal from the judgment of the inspector given by the building regulations would afford to the .owner of property the judicial investigation of his rights to which he is entitled; and that feature of the case may be entirely dismissed from our consideration.
We are of opinion that the Police Court of the District of *259 Columbia, to which has been committed by the legislative power the right to adjudicate upon the forfeiture claimed from this appellant, has full, power to determine all the issues that it has been sought to raise by this bill in equity. It is not only the right, it is likewise the duty, of that court to determine judicially the questions at issue between the- appellant and the inspector of buildings, or between the appellant and the District of Columbia, whose agent the inspector is. It may possibly be that the notice of the inspector should be taken as prima facie evidence of the insecure and dangerous character of the wall in question; but it can be no more than prima facie evidence. The appellant is entitled to controvert that evidence; and it will be the duty of the court in this, as in other cases, to give judgment according to the preponderance of evidence. That court should not enforce the penalty prescribed by the building regulations except upon testimony tending to show that the wall in question is in fact insecure and dangerous, and not merely because the inspector of buildings has said that it was so. That court, too, has authority to investigate the question of the ownership of the wall and of the extent of the easement, if any, of the adjacent owner therein, so far as that question may enter into the liability of the appellant for the penalty which it is sought to impose upon her.
So holding, we must hold further that , a court of equity has no jurisdiction in the premises to grant the relief prayed for by the appellant. If the jurisdiction of a court of equity could be- upheld in this case, it would nullify all attempts to enforce the municipal ordinances of the District of Columbia, and take away from the court especially created for that purpose the authority conferred upon it by Congress to pass upon such ordinances and questions of their violation. A court of equity cannot be substituted for the Police Court in this case; and, as we have seen, there is no necessity for the substitution.

It is our conclusion that the appeal in this case should be dismissed, with costs to the appellee ; and it is accordingly so ordered.